UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ELITE ADVANTAGE, LLC. and<br>EDWARD E. SELL, Individually and on<br>behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>TRIVEST FUND IV, L.P.,<br>TRIVEST PARTNERS GP, LLC,<br>TRIVEST PARTNERS IV, INC., AND<br>TROY D. TEMPLETON,<br><br>      Defendants. | NO. 2:15CV349-PPS/JEM |

## ORDER

DirectBuy, Inc. is a franchisor of members-only buying clubs, in which consumers pay a membership fee to purchase furniture, appliances, home improvement fixtures and other merchandise at wholesale prices.  Plaintiffs Elite Advantage and Edward Sell bring this putative class action for current and former DirectBuy franchisees, asserting RICO and RICO conspiracy claims under 18 U.S.C. §1962(c) and §1962(d), the predicate acts of which include allegations of mail and wire fraud. The complaint also alleges a state law claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). The case was originally filed in the Southern District of Florida, but was transferred here. [DE 1 at 27, 33, 34.]

Plaintiff Elite Advantage operated a Sarasota, Florida DirectBuy franchise begun by Rick & Katherine Miller, opened in December 2007 and closed in July 2014.  [DE 1 at

¶15.] Individual plaintiff Sell is an Indiana resident and was the franchisee of a Tinley Park, Illinois franchise (along with his wife I.J. Sell) from 1997 to 2014. The story begins in November 2007 when DirectBuy was sold to defendant Trivest for $550 million through a highly leveraged transaction. [DE 1 at ¶7.] The complaint contends that, in order to drive the new membership sales necessary to fund the acquisition and to pay DirectBuy's debt load, the defendants "engaged in a scheme to fraudulently induce...Franchisees into funding DirectBuy marketing and advertising programs, by imposing unauthorized charges in excess of the 3% cap" – a limitation under the franchise agreement based on 3% of the franchise's new membership fees. [DE 1 at ¶8.] Defendant Templeton is Chairman of DirectBuy's Board of Directors, allegedly installed by Trivest soon after its acquisition of DirectBuy.

Trivest's highly leveraged purchase of DirectBuy was the acorn that led to an oak tree of litigation for DirectBuy. This is one of several lawsuits brought against DirectBuy by its franchisees — three of which are pending in this court. *Arcangelo Inc., et al. v. DirectBuy, Inc., et al.*, 3:13CV104-PPS, and *DirectBuy, Inc. v. ANCJ, LLC, et al.*, 2:14cv91-PPS, recently consolidated with *Sedaker Group of Southern California Inc., et al. v. DirectBuy, Inc., et al.*, 2:15cv198-PPS. In each of those cases, the franchisees contend that DirectBuy breached the franchise agreement by charging fees in excess of the 3% cap that the agreement permits. Although the cases are similar factually, the other cases allege a breach of contract. The franchisees in this case have taken a different tack. By invoking the specter of RICO, they contend that DirectBuy's purchaser, Trivest, didn't

just breach the franchise agreement; instead, they contend that a fraud was committed. So while the facts are similar to the other cases, the legal theory is different — fraud versus contract. And the defendant is different as well. Whereas the other cases involve suit against DirectBuy, the defendant in this case is Trivest. The Trivest defendants now seeks dismissal of the complaint, based on a number of arguments.

**RICO Statute of Limitations**

Defendants' first contention is that both the RICO and the FDUTPA claims are time-barred. The parties agree that there is a four-year statute of limitations on RICO claims. *Rotella v. Wood*, 528 U.S. 549, 553 (2000). They also agree that the limitations period begins to run when a plaintiff knows or should know of its injury. *Id*. at 555. The Seventh Circuit cautions against dismissals based on statutes of limitations prior to discovery: "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP,* 559 F.3d 671, 674 (7th Cir. 2009). Nonetheless, if a complaint itself pleads all the facts necessary to establish the defense, then dismissal at the pleading stage is appropriate. *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015). But "[a]s long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations

3

based on a more complete factual record." *Sidney Hillman Health Center of Rochester v. Abbott Laboratories, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

The injury alleged in this case is the imposition of marketing and advertising fees in excess of the 3% cap called for in the franchise agreement. [DE 1 at ¶91.] That injury was known or knowable by the franchisee plaintiffs as soon as such fees were first imposed. The complaint alleges that the excess fees were charged between November 2007 and January 1, 2012. [DE 1 at ¶72.] This action with its RICO claims was filed on June 5, 2015, more than 7 years after the first knowable injury in November 2007.

The franchises respond with the argument that defendants are equitably estopped from enforcing the RICO statute of limitations because of DirectBuy's "affirmative steps to conceal the fraudulent scheme from plaintiffs and other DirectBuy franchisees." [DE 51 at 2.] This supposed concealment is merely that DirectBuy repeatedly articulated to the franchisees its position that the fees imposed were authorized by the franchise agreements. [DE 51 at 2-3.] Fraudulent concealment in this context is a form of equitable estoppel that "tolls the statute of limitations during a period in which the defendant has taken steps to prevent the plaintiff from filing his complaint until the statute of limitations expires." *Arroyo v. United States*, 656 F.3d 663, 678-79 (7th Cir. 2011). "In order for a plaintiff to benefit from tolling for fraudulent concealment, he must show 'that he neither knew nor, in the exercise of due diligence, could reasonably have known of the offense.'" *In re Copper Antitrust Litigation*, 436 F.3d 782, 791 (7th Cir. 2006), quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194-95 (1997).

4

DirectBuy's announcement, even advocacy, of its legal position on the contract interpretation is hardly fraudulent concealment that could equitably toll the statute of limitations. Since defendants still maintain that position today — after all, that's what the other DirectBuy cases are all about — the franchisees' argument would mean that the limitations period has not yet begun to run. That is a ridiculous contention. The Seventh Circuit has rejected such arguments: "a denial of liability is not a basis for equitable estoppel – otherwise a statute of limitations would never run unless the potential defendant confessed error before he was sued!" *Stephan v. Goldinger*, 325 F.3d 874, 878 (7th Cir. 2003).

"[A] denial of liability...cannot constitute a basis for equitable estoppel unless [defendant] had a fiduciary relationship to the plaintiff." *Bishop v. Gainer*, 272 F.3d 1009, 1014 (7th Cir. 2001). But "it is settled that no fiduciary relationship exists between a franchisor and franchisee." *FLB, LLC v. Cellco Partnership*, 536 Fed.Appx. 132, 134 (2nd Cir. 2013). As Trivest notes, I have previously held, based on disclaimers in the franchise agreements and on Indiana law generally, that DirectBuy has no fiduciary relationship with its franchises. *Arcangelo, Inc. v. DirectBuy, Inc.*, 2013 WL 6095678, at *10 (N.D.Ind. Nov. 20, 2013).

To contend that within four years of DirectBuy's imposition of the marketing fees the franchisees did not know, and could not have known, what they now contend — that they were injured by fees imposed in violation of the franchise agreement — is entirely untenable. Franchise agreements are arms-length contracts between

5

sophisticated business entities. That one party insists, no matter how vehemently, that it is within its contractual rights to take some action the other party opposes does not "conceal" a breach or fraud. The injured party is free to reach its own conclusions about what the contract permits, seek advice of counsel on the subject, and file suit claiming a breach whenever it likes.

The franchisees also argue that the separate accrual doctrine "operates to delay the deadline for plaintiffs to have filed their claims." [DE 51 at 5.] Under the separate accrual doctrine, a new cause of action arises when (but only when) "there is a new instance of wrongful conduct *and* a new injury." *McCool v. Strata Oil Company*, 972 F.2d 1452, 1465, n.10 (7th Cir. 1992) (emphasis in original). "Different injuries flowing from the same conduct are not usually actionable in separate lawsuits, except for "late-developing injuries that cannot be proved in the first lawsuit." *Id.* Civil RICO violations are not treated as continuing violations with "recovery for all injuries in one lawsuit." *Id*. at 1466.

Here the repeated infliction of the same alleged injury — the imposition of unauthorized marketing fees on a regular basis — does not trigger the accrual of new limitations periods, because the conduct did not involve a new and independent injury but merely an accumulating one. *Pilkington v. United Airlines*, 112 F.3d 1532, 1537-38 (11th Cir. 1997). In an illustrative case, the collection of annual fees imposed by Merrill Lynch on real estate limited partnerships "cannot be viewed as a separate and distinct fraud creating new injuries as it was simply a part of the alleged scheme," and so did

not extend the RICO limitations period. *In re Merrill Lynch Ltd. Partnerships Litigation*, 154 F.3d 56, 59 (2nd Cir. 1998). This case is also analogous to a RICO claim based on a bank's repeated imposition of excessive overdraft fees on account holders: "The injury Plaintiff allegedly sustained each time the bank charged an overdraft fee is not a new and independent injury. Rather, each fee is part of a continuous injury resulting from the single fee-collecting scheme." *Ward v. Dickinson Financial Corp. II, Inc.*, 2015 WL 1020151 at *11 (M.D.Ga. March 9, 2015).

The cases plaintiffs rely on to the contrary are readily distinguishable. In *Bingham v. Zolt*, 66 F.3d 553, 561 (2nd Cir. 1995), the Second Circuit found the separate accrual doctrine applicable because the facts "involve[d] a continuing series of fraudulent actions undertaken to divert and conceal assets and income" and "[a] variety of schemes were employed, involving frequent misappropriations of discrete amounts of money from different sources." Here, there is no such variety of fraudulent acts and resulting injuries. The *Bingham* court recognized that where later injuries are not both "new and independent" from original injuries, a new civil RICO limitations period is not triggered. *Id.* at 560.

Plaintiffs also cite *American Medical Ass'n v. United Healthcare Corp.*, 2006 WL 3833440 at *10 (S.D.N.Y. Dec. 29, 2006), which recognizes that the separate accrual doctrine requires "new and independent" injuries. The facts there involved health insurers' alleged scheme to under-reimburse their insureds and healthcare providers through deception, concealment and the manipulation of data used to set "usual,

7

customary and reasonable" fees for services. *Id*. at *1. The court found that the multiple injuries inflicted from numerous separate false reimbursement determinations over time could not be said to have resulted from just one initial event. By contrast, all the injuries alleged from DirectBuy's imposition of excess marketing fees stem from a single determination as to how the fees were to be imposed on the franchises – in the language of *Ward*, a "single fee-collecting scheme." *Ward*, 2015 WL 1020151 at *11.

Because the franchises have pled that the challenged marketing fees began to be imposed in November 2007 but the franchises failed to bring suit until June 2015, their own complaint establishes the 4-year statute of limitations defense and they have pled themselves out of court. Plaintiffs' efforts to argue around that result, through invocation of the doctrines of fraudulent concealment and separate accrual, are without merit. Claims I and II under RICO are therefore time-barred.

**FDUTPA Statute of Limitations**

The FDUTPA claim also carries a four-year statute of limitations, under Fla. Stat.Ann. §95.11(3)(f). Under Florida law, the delayed discovery doctrine does not apply, and the statute of limitations period begins to run when damages were sustained from the unfair practice. *Marlborough Holdings Group, Ltd. v. Azimut-Benetti*, 505 Fed.Appx. 899, 906 (11th Cir. 2013); *HRCC, Ltd. v. Hard Rock Café Inter. (USA), Inc.*, 2015 WL 3498610 at *7 (M.D.Fla. June 2, 2015). I have already found plaintiffs' fraudulent concealment argument untenable, and so conclude that, like the RICO claims, the

8

FDUTPA claim is untimely because it was not brought within four years of DirectBuy's first imposition of the marketing fees plaintiffs claim violated the law.

### Other Arguments for Dismissal

The defendants have raised a number of other arguments in their challenge to the plaintiffs' complaint. Trivest argues that plaintiff Edward Sell does not have standing because he assigned his franchise to a corporate entity prior to the events complained of in the lawsuit. Other issues raised by Trivest include whether the complaint needs to plead the franchises' satisfaction of the franchise agreement's requirement that timely written notice be given of any alleged breach by DirectBuy. Trivest also challenges the sufficiency of the pleading of fraud under Rule 9(b), of the elements of a RICO claim , and of a FDUTPA violation. But because the statute of limitations argument appears to be case dispositive, I need not and will not address these arguments.

### Dismissal with Prejudice or Without Prejudice?

The final issue is whether the dismissal of the complaint should be with or without prejudice. The general rule in the Seventh Circuit is that leave to amend should be "freely given and only denied after a motion to dismiss where 'it appears to a certainty that the plaintiff cannot state a claim upon which relief can be granted. . . '" *Barry Aviation v. Land O'Lake Municipal Airport*, 377 F.3d 682, 690 (7th Cir. 2004), quoting *Rohler*, 576 F.2d at 1266. *See also Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930, 943 (7th Cir . 2012) (there are "powerful reasons to give parties a

reasonable opportunity to cure defects identified by a district court" in an order dismissing a case). *Barry* was a case where the district court dismissed a RICO claim with prejudice on statute of limitations grounds; there was no opportunity to amend given. The Seventh Circuit reversed, finding that the complaint did not definitively establish that the statute of limitations had expired, and saying that the plaintiff should have been given an opportunity to replead.

While the plaintiffs' RICO and FDUPTA theories against Trivest appear hopelessly stale, I will nonetheless give the plaintiffs another opportunity to attempt to plead around the problems raised in this opinion or, if they choose, plead other claims that may not be subject to dismissal. The plaintiffs will be given 30 days to file an amended complaint.

**ACCORDINGLY:**

Defendants' Motion to Dismiss [DE 41] is GRANTED, and plaintiffs' claims under RICO and FDUTPA are dismissed as untimely under the applicable statutes of limitations. The plaintiffs are given thirty days from the date of this order to file an amended complaint.

**SO ORDERED.**

ENTERED: January 14, 2016.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT